[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Appeal from an assessment of damages in the amount of $2900 made by the defendant Commissioner of Transportation in respect to the partial taking of the plaintiff's land situated on the easterly side of Center Street in the town of Windsor and more particularly shown on map entitled "Town of Windsor, Map showing land acquired from Lodola Realty by the State of Connecticut, Interstate Route 91 (Limited Access Highway) Scale 1" = 40', March 1989, Robert W. Gubala, Transportation Chief Engineer — Bureau of Highways." (Exhibit B). The parties stipulated that the date of taking was March 23, 1990, and that the deposit of $2900 had been paid. The parties also waived their right under General Statutes 13a-76 to have the trier view the subject property.
The subject property consists of a parcel of land containing 25.67 acres with 738.40 front feet on the eastside of Center Street. The land is mostly below the Center Street road grade, has rolling topography and is wooded. There are 18.39 acres of designated inland-wetlands. It is encumbered by a 40 foot drainage right of way in favor of the town of Windsor, a 10 foot drainage right of way in the favor of the State of Connecticut, and a 10 foot pipeline right of way in favor of the Buckeye Pipe Lines Co.
The subject property is located in two zones, namely, industrial from the street front to one half the depth and warehouse from one half the depth to the rear line. The industrial zone requires a minimum lot area of 2 acres, a minimum lot width of 180 feet, a minimum front yard of fifty feet and side and rear yards of 35 feet each. It also limits maximum site coverage to 33 1/3 percent. Permitted in an industrial zone are offices and research laboratories. The warehouse zone requires a minimum lot area of 4 acres and the same front side and rear yard requirements as set forth in the industrial zone. It also limits building coverage to 33 1/3 percent of the site. The highest and best use of the subject property is for industrial and warehouse development in conformity with the zoning regulations.
The take consists of 1.45 acres of land along Center CT Page 7343 Street. The take will deny access from the subject property to Center Street for the entire frontage except for the southern most 60 feet.
Peter Marsele, a real estate appraiser, testified as an expert witness on behalf of the plaintiff. Utilizing the sales comparison approach, Marsele opined that the before value of the subject property was $565,000, the after value $121,000 and the damages $444,000.
Robert Palmer, the real estate appraiser, testified as an expert witness on behalf of the Commissioner. It was his opinion, also based on the sales comparisons approach that the before value of the subject property was $353,250, the after value $350,350 and the damages $2900.
A critical issue in this case is the extent of wetlands on the subject property. It is the plaintiff's position that the frontage area, that is the area from Center Street eastward to depth of 300 feet, contains 4.60 acres of which 2.28 acres is in a non-wetlands area and 2.32 acres is in a wetlands area. It is the plaintiff's further position that the the frontage area was developable at the time of the taking in conformity with the Windsor Zoning regulations. It is the Commissioner's position that the westerly two-thirds of the subject property adjacent to Center Street in inland-wetlands and is not buildable. Both parties agree that otherwise developable land in the rear could not be developed without crossing an extensive wetland area and that receiving permission to cross such wetland would not, in all probability, be forth coming.
Wilson Alford, Jr., a land surveyor and engineer testified as an expert witness on behalf of the plaintiff. He testified in detail about the subject property with special reference to the wetlands issue. He produced a map (Exhibit C) on which he had drawn the wetlands area on the subject property. He testified that in the area near Center Street there were 2.28 acres of non-wetlands. He also testified that he had conducted percolation tests in the four test holes, which he described (Exhibit F) and that these tests showed a percolation rate ranging from 1" in 60 minutes to 1" in 27 minutes. Since a percolation rate of 1" in 60 minutes is satisfactory, Alford opined that based on his test results the soil in the non-wetlands area of the subject property was satisfactory for the installation of a septic tank system.
Bruce C. Laskey, a soil scientist, testified as an expert witness on behalf of the plaintiff. Laskey conducted a field investigation of the soils on the subject property. He reported that in the course of his investigations he made many CT Page 7344 soil borings. He described in detail the various soils on the subject property. On the basis of his investigation he fully supported the designation of the wetlands area contained in the map prepared by Alford.
Robert Sonnicksen, a professional engineer with some experience in the field of environmental protection, testified as an expert witness on behalf of the commissioner. Sonnicksen is not a soil scientist nor as a matter of practice does he designate wetlands areas. He conducted four percolation tests on the subject property. These tests resulted in percolation rates greater than the required minimum of one inch in 60 minutes. Three of these tests were conducted in the test holes below the ground water table in contravention of the Connecticut Health Code which provides (Exhibit H p. 25) "the percolation test must be done in unsaturated soil above the ground water table . . ." Later when apprised of the results of the Alford tests, Sonnicksen conducted two additional tests both of which produced results less than the minimum required percolation rate.
Concerning the wetlands issue, Sonnicksen's testimony can best be characterized as tengential and of questionable significance. On the basis of the credible evidence presented I find in favor of the plaintiff on the wetlands issue.
I find the before value of the subject property to be $404,000, the after value $121,000 and the damages $283,000.
Accordingly, judgment may enter in favor of the plaintiff in the amount of $283,000 less the amount of $2900 already paid as an excess of $280,100, with interest on the excess from the date of taking to the date of payment together with costs and an appraisal fee of $1500.
LEO PARSKEY STATE TRIAL REFEREE